UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REANNON L. TWEEDLE,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ANDREW SAUL, Commissioner of Social Security,<br><br>　　　　Defendant. | No.  2:18-cv-02007 CKD<br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for disability insurance benefits and supplemental social security income under Titles II and XVI of the Social Security Act ("Act").  The parties have consented to Magistrate Judge jurisdiction to conduct all proceedings in the case, including the entry of final judgment.  For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

////

////

/////

/////

1

BACKGROUND

Plaintiff, born in 1981, applied for disability insurance benefits in April 2014 and supplemental security income (SSI) in October 2016, both applications alleging disability beginning March 3, 2014.[1]  Administrative Transcript ("AT") 15.  The ALJ consolidated plaintiff's DIB and SSI claims.  AT 36-37.  Plaintiff alleged she was unable to work due to nerve damage in the left side of the head and both hands.  AT 221.  Following a hearing on November 17, 2016, an ALJ issued a decision dated February 27, 2017 finding plaintiff not disabled.  AT 15-28.

The ALJ made the following findings (citations to 20 C.F.R. omitted):

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.   Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs.  See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).
The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

2

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2018.
>
> 2. The claimant has not engaged in substantial gainful activity since March 3, 2014, the alleged onset date.
>
> 3. The claimant has the following severe impairments: anxiety, panic disorder, fibromyalgia, headaches, degenerative disc disease of the cervical and lumbar spine(s), bilateral carpal tunnel syndrome status post release(s), and obesity.
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work except as follows: the claimant requires a sit, stand option. The claimant is limited to frequent handling and fingering with the bilateral upper extremities. The claimant is able to occasionally climb, stoop, kneel, crouch, or crawl. She is able to frequently balance. The claimant must avoid all exposure to work hazards, such as moving machinery and unprotected heights. The claimant is able to understand, remember, and carry out simple and routine tasks. She is able to use judgment for work-related decisions.
>
> 6. The claimant is unable to perform any past relevant work.
>
> 7. The claimant was born on XX/XX/1981, which is defined as a younger individual age 18-49, on the alleged disability onset date.
>
> 8. The claimant has at least a high school education and is able to communicate in English.
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills.
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from March 3, 2014 through the date of this decision.

AT 17-28.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) the ALJ improperly weighed the medical opinion evidence; and (2) the ALJ improperly discounted plaintiff's statements regarding her pain and functional limitations.

3

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

A. Medical Opinions

Plaintiff asserts that the ALJ erred in discounting the opinion of her treating neurologist, Dr. Arish Eduljee, who completed a Fibromyalgia Medical Statement on August 23, 2016. See AT 440-444.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Lester v. Chater, 81 F.3d 821, 830 (9th Cir.

1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual.  Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81 F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons.  Lester, 81 F.3d at 830.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional.  Lester, 81 F.3d at 831.

"Fibromyalgia is 'a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue.'" Revels v. Berryhill, 874 F.3d 648, 656 (9th Cir. 2017) (quoting Benecke v. Barnhart, 379 F.3d 587, 589 (9th Cir. 2004)). "Typical symptoms include 'chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue.'" Id. (quoting Benecke, 379 F.3d at 590). "What is unusual about the disease is that those suffering from it have muscle strength, sensory functions, and reflexes that are normal." Id. (internal quotation marks and alteration omitted). "Their joints appear normal, and further musculoskeletal examination indicates no objective joint swelling." Id. (internal quotation marks omitted). "Indeed, there is an absence of symptoms that a lay person may ordinarily associate with joint and

muscle pain." Id. (internal quotation marks and alteration omitted). "The condition is diagnosed 'entirely on the basis of the patients' reports of pain and other symptoms.'" Id. (quoting Benecke, 379 F.3d at 590). "[T]here are no laboratory tests to confirm the diagnosis." Id. (alteration in original) (quoting Benecke, 379 F.3d at 590).

Social Security Ruling ("SSR") 12-2p "recognizes that the symptoms of fibromyalgia 'wax and wane,' and that a person may have 'bad days and good days.'" Revels, 874 F.3d at 657 (quoting SSR 12-2p). For this reason, the ruling "warns that after a claimant has established a diagnosis of fibromyalgia, an analysis of her [residual functional capacity] should consider 'a longitudinal record whenever possible.'" Id. (quoting SSR 12-2p). "In evaluating whether a claimant's residual functional capacity renders them disabled because of fibromyalgia, the medical evidence must be construed in light of fibromyalgia's unique symptoms and diagnostic methods, as described in SSR 12-2P and Benecke[, 379 F.3d 587]. The failure to do so is error[.]" Id. at 662.

1. Dr. Edujlee's Opinion

When Dr. Eduljee completed the August 2016 fibromyalgia assessment, he noted that he had been treating plaintiff since July 2014. AT 440. Dr. Eduljee indicated that plaintiff met the 1990 American College of Rheumatology Preliminary Diagnostic Criteria for Fibromyalgia.[2] AT

---

[2] As the Ninth Circuit explained, the Social Security Administration recognizes two methods for diagnosing fibromyalgia: the 1990 American College of Rheumatology Criteria for the Classification of Fibromyalgia ("1990 Criteria") and the 2010 American College of Rheumatology Preliminary Diagnostic Criteria ("2010 Criteria"). Social Security Ruling ("SSR") 12-2P at 2, available at 77 Fed. Reg. 43,640 (July 25, 2012). Under the 1990 Criteria:

> a person suffers from fibromyalgia if: (1) she has widespread joint pain that has lasted at least three months (although the pain may "fluctuate in intensity and may not always be present"); (2) she has tenderness in at least eleven of eighteen specified points on her body; and (3) there is evidence that other disorders are not accounting for the pain.

Truong v. Berryhill, 774 Fed. Appx. 381, 382-383 (9th Cir. 2019) (unpublished) (quoting Revels v. Berryhill, 874 F.3d 648, 656–57 (9th Cir. 2017), SSR 12-2P at 2–3)). Under the 2010 Criteria:

> a person suffers from fibromyalgia if: (1) she has widespread pain that has lasted at least three months (although the pain may "fluctuate in intensity and may not always be present"); (2) she has experienced repeated manifestation of six or more fibromyalgia symptoms, signs,

440. Her assessed symptoms included a history of widespread pain lasting more than three months; 11 of 18 specific tender points; muscle pain and weakness; frequent severe headaches; dizziness; shortness of breath; insomnia; pain in upper abdomen; fatigue; depression; anxiety disorder; chronic fatigue syndrome; migraines; carpal tunnel syndrome; and panic attacks. AT 440-441. Dr. Eduljee listed plaintiff's other diagnosed impairments as cervicalgia, migraines, and occipital neuralgia. AT 441. His assessment noted that she experienced bilateral pain in her shoulders, arms, hands/fingers, hips, legs, and knees/ankles/feet, with movement/overuse precipitating pain. AT 441. Dr. Eduljee's prognosis was "guarded" and he expected plaintiff's fibromyalgia to last at least twelve months. AT 442. He opined that plaintiff did not have the stamina and endurance to work an eight-hour job, five days a week, with normal breaks, due to "complaints of pain all over." AT 442.

The ALJ summarized Dr. Eduljee's opined functional limitations as follows:

> In August 2016, treating physician, A. Eduljee, M.D., rendered a physical assessment wherein he opined as follows: the claimant must alternate between sitting and standing at will. She must take 30-minute unscheduled breaks every 30 minutes of work. The claimant must elevate her legs for 50% of the workday with two pillows. The claimant is able to grasp, reach in front of body and engage in fine manipulation 50% of the workday. She is able to reach overhead 5% of the workday. The claimant is incapable of low stress work. She will be absent from work more than 4 days per month.

AT 26, citing AT 443-444.

The ALJ largely discounted this opinion, citing the following reasons:

> This assessment is given little weight. First, the limitations are extreme and out of proportion to the objective evidence. For example, MRI films of the spine show only mild to moderate degeneration with nerve root contact[,] and physical examinations indicate largely normal results, including normal gait, normal muscle tone, and normal muscle strength. To this end, Dr. Eduljee is primarily supporting his assessment with the claimant's complaints

or co-occurring conditions, "especially manifestations of fatigue, cognitive or memory problems ('fibro fog'), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome"; and (3) there is evidence that other disorders are not accounting for the pain.

Revels, 874 F.3d at 657 (quoting SSR 12-2P at 3). Notably, "diagnosis of fibromyalgia does not rely on X-rays or MRIs." Id.

>  of pain and tenderness.  The undersigned finds these complaints insufficient to establish a residual functional capacity of less than sedentary.  Furthermore, the assessment is inconsistent with the claimant's own admissions regarding daily activities.  Specifically, the claimant would be incapable of regularly caring for her 4 young children if she required breaks from activity for 50% of the day.[3] Moreover, the assessment conflicts with treatment recommendations, insomuch as Dr. Eduljee recommended conservative care for the claimant's chronic pain complaints.[4] Lastly, the assessment is inconsistent with treatment report notations (suggesting the claimant's symptoms were controlled with medication) and the record as a whole.[5]

AT 26-27.

### 2. Other Opinions – Physical Limitations

While discounting Dr. Edjuljee's opinion, the ALJ credited the physical residual functional capacity assessment of State agency medical consultant Dr. S. Amon, who reviewed plaintiff's records in July 2014 and found her capable of light work with limitations as to handling and fingering with the bilateral upper extremities, and additional limitations as to climbing, stooping, kneeling, crouching, and crawling.  AT 26, citing 104-105.  The ALJ found

---

[3] See AT 24, noting that "the claimant is able to care for her 4 young children on a daily basis. . . . She alleged she is able to care for all daily needs, including bathing, hygiene, food, and transportation.  Such evidence shows the claimant retains significant physical and mental capabilities."  In support of this finding, the ALJ cited a June 2014 adult function report in which plaintiff stated: "I have 4 children. I take care of their daily needs. Food, clothing, bathing, hygiene, appointment[s]."  AT 238.  She further stated that she prepared three meals a day, did cleaning and laundry, went shopping and to the park, and took walks three times a week.  AT 238-241.  The ALJ also cited an August 2014 consultative exam by psychologist Dr. Ona Stiles in which Dr. Stiles noted: "Claimant is independent for basic ADLs and does not need help with preparing meals. Claimant is able to make change at the store. The claimant reportedly spends the day, 'now because it is summer, I try to do fun stuff with the kids. We try to get out and then fix meals and then watch some TV and they play outside.'"  AT 383.

[4] See AT 339-340 (in April 2014, Dr. Eduljee diagnosed plaintiff with mild carpal tunnel syndrome and recommended she wear an arm splint; he noted her symptoms were "very mild" but could progress, and prescribed medication for her migraines. On examination, her mental status, muscuoskeletal/extremities, and motor skills were normal.)

[5] See AT 410-12 (in October 2014, Dr. Eduljee noted that, on medication, "she is better in that the number of her headaches have been much lesser than before"; mental status and physical exams were normal; Dr. Eduljee diagnosed plaintiff with "excessive daytime sleepiness," carpal tunnel syndrome (for which she continued to wear a splint), and migraine without aura).

Dr. Amon's opinion "supported by accounts of daily activities, the mild to moderate findings upon diagnostic testing, the largely conservative history of medical care, assessments of treating physicians, and the record as a whole." AT 26.

The ALJ also gave some weight to the opinion of treating physician Dr. Kalphana Phadnis, who saw plaintiff on November 7, 2014 to "discuss disability paperwork" and noted her history of bilateral carpal tunnel syndrome and chronic migraine. AT 26, citing 408-409. Dr. Phadnis noted that plaintiff "is scheduled for surgery on her right wrist in January 2015" and "is planning to get the surgery of the left hand done subsequently." AT 408. Dr. Phadnis further noted that plaintiff "has been given disability up to 3/7/15." AT 409. The ALJ reasoned that "[t]his finding is consistent with the above residual functional capacity, insomuch as it shows the claimant retained significant physical capabilities throughout the period at issue." AT 26. The court understands this to mean that, because Dr. Phadnis found plaintiff disabled until March 7, 2015 (following one or more surgeries on her hands), Dr. Phadnis did not find her to be disabled for any longer period.[6] See AT 25 ("The medical opinion evidence supports the above residual functional capacity. It is noted that the record contains a statement from one of the claimant's doctors releasing the claimant to return to work.").

       3.   Other Opinions – Mental Limitations

As to mental limitations, the ALJ partially credited the opinion of examining physician Dr. Ona Stiles, who did a mental assessment of plaintiff on August 14, 2014. See AT 379-386. The ALJ credited Dr. Stiles' opinion "to the extent it shows the claimant is capable of simple unskilled work," which was "supported by accounts of daily activities, clinical findings, and the record as a whole." AT 25, citing AT 379-386. The ALJ rejected some of Dr. Stiles' opined mental limitations, reasoning: "The claimant is capable of caring for her 4 young children on a daily basis, which clearly requires tremendous mental capabilities." AT 25. The ALJ also noted plaintiff's "largely normal mental status examination" and "[her] own admissions regarding abilities and activities" in discounting some of Dr. Stiles' opined mental limitations. AT 25.

---

[6] The period of alleged disability in this case is April 14, 2014 to February 27, 2017.

9

The ALJ also gave great weight to a February 2015 psychological assessment by State agency consultant Dr. J. Schnitzler, who found plaintiff had no restrictions in activities of daily living, mild difficulties in social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. AT 26, citing AT 115-121. Dr. Schnitzler found plaintiff to be "partially credible" as to the severity and limiting effects of her symptoms, and opined that her psychological symptoms were not so severe as "to preclude all work activities as alleged." AT 117-118. As with Dr. Amon's opinion, the ALJ found this opinion "supported by accounts of daily activities, the mild to moderate findings upon diagnostic testing, the largely conservative history of medical care, assessments of treating physicians, and the record as a whole." AT 26.

4. <u>Analysis</u>

Here, the ALJ credited the whole or partial opinions of four physicians (Dr. Amon, Dr. Stiles, Dr. Phadnis, and Dr. Schnitzler) to arrive at an RFC that did not incorporate the limitations opined by treating specialist Dr. Eduljee. See <u>Saelee v. Chater</u>, 94 F.3d 520, 522 (9th Cir. 1996) ("the findings of a nontreating, nonexamining physician can amount to substantial evidence, so long as other evidence in the record supports those findings"). The ALJ also cited plaintiff's "mild to moderate degeneration with nerve root contact" and "largely normal [examination] results, including normal gait, normal muscle tone, and normal muscle strength" in rejecting Dr. Eduljee's opinion, though these factors are less significant with fibromyalgia: a disease which, as the <u>Revels</u> court explained, can cause impairments despite an absence of symptoms associated with joint and muscle pain, and despite normal examination findings. Plaintiff's conservative care and treatment plan (in part prescribed by Dr. Edjuljee himself) are additional valid reasons to discount his opined limitations, even as a treating specialist. The longitudinal record indicates that plaintiff juggled daily responsibilities in caring for four children, including doing cooking and housework and taking the family on outings. The ALJ could reasonably find this history undercut Dr. Eduljee's opined limitations of, e.g., needing to elevate her legs for 50% of the workday.

The remaining issue is plaintiff's credibility as to the severity and limiting effects of her symptoms. The ALJ rejected Dr. Eduljee's opinion in part because it appeared to be largely

based on plaintiff's subjective statements. The court considers the disputed issue of credibility below.

B. Credibility

The ALJ summarized plaintiff's subjective complaints as follows:

> At the hearing, the claimant indicated she stopped working at her previous employer due to severe stress. The claimant stated that she was in a 'higher bracket of anxiety' compared to when she was not working. The claimant explained that she required multiple trips to the emergency room to treat panic attacks. The claimant reported deficits in memory, concentration, understanding, and getting along with others. The claimant represented she deals poorly with stress or change.
>
> In addition to her mental impairments, the claimant endorsed symptoms of widespread chronic pain, headaches, and fatigue. The claimant estimated she has 2-3 migraines per month, lasting up to 7 days. The claimant alleged she is limited due to the severity of her physical impairments. The claimant testified she is unable to engage in prolonged sitting, standing, or walking. The claimant stated she is able to sit, stand, or walk for 30 minutes before she must change positions. The claimant reported she is unable to lift significant weight. The claimant explained that lifting a 15-20 pound bag of groceries is too much to tolerate. The claimant advised she has difficulty using her hands. She stated that her fingers get 'stuck,' and she often drops items. The claimant indicated she is most comfortable lying in a dark room. The claimant testified she is limited in the abilities to bend and squat. The claimant represented she is restricted in activities of daily living due to her mental and physical impairments. The claimant alleged she is unable to sustain work function on a regular and continuous basis.

AT 21, citing AT 12-32 (hearing testimony), 237-245, 301-303.

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ

then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. See id. at 345-47.  The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13.  Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997).  A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment. See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995).  The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

Here, the ALJ discounted plaintiff's credibility for multiple reasons: (1) plaintiff's daily activities "are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations"; rather plaintiff was able to "care for all daily needs" of four children as described above; (2) plaintiff "has not generally received the type of medical treatment one would expect for a totally disabled individual," with "conservative care" consisting of medication and surgery for carpal tunnel syndrome; (3) "[t]he record reveals that the claimant's allegedly disabling impairments were present at approximately the same level of severity prior to the alleged onset date," including childhood panic attacks and chronic pain complaints after a 2010 car accident; yet, these impairments "did not prevent the claimant from working previously."[7]

---

[7] See AT 49-52 (testimony that plaintiff held past jobs in retail, education, and in-home care), AT 203-209 (earnings records).

12

AT 24.

Fourth, the ALJ wrote,

> The claimant has provided inconsistent information about her symptoms and limitations. At the hearing, the claimant estimated that she has 2-3 headaches per month, lasting up to 7 days. Conversely, records confirmed the claimant's headaches were 'well controlled' with medication.[8] As of January 2015, the claimant noted that her headaches had not been very frequent. As to her mental health symptoms, the claimant testified that she has had two panic attacks throughout the course of her disease. On the other hand, the claimant indicated to examining physician Dr. Stiles that she has experienced panic attacks since childhood, and that they impair her <u>every day</u>.[9] The claimant's inconsistent accounting undercuts her allegations.

AT 24-25 (emphasis in original).

As the cited factors have substantial evidentiary support, the undersigned concludes that the ALJ used the proper process and provided proper reasons in determining credibility. The court therefore defers to the ALJ's discretion on this issue. Based on the foregoing, plaintiff has not shown reversible error on either of the grounds asserted.

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 15) is denied;

2. The Commissioner's cross-motion for summary judgment (ECF No. 16) is granted; and

3. Judgment is entered for the Commissioner.

Dated: August 4, 2020

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/tweedle2007.ssi.ckd

---

[8] Citing AT 396.
[9] Citing AT 385.